ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5044
   Fax: (408) 535-5081
   George.Hageman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALLEN RELEFORD, <br><br> Defendant. | CASE NO. 3:22-CR-00075-WHO <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:         Hon. William H. Orrick <br> Hearing Date:  March 28, 2024 <br> Hearing Time:  1:30 PM |

## I. INTRODUCTION

In 2008, defendant Allen Releford was sentenced to 14 years in prison for felony kidnapping with a criminal street gang enhancement and felony assault with a deadly weapon causing great bodily injury. Both related to his armed kidnapping and gang rape of an underaged female victim on the streets of downtown San Francisco. Releford was released in September 2021. Just a few months later, in January 2022, while still on active parole, he was caught in possession of a loaded Glock 26 9mm pistol.

Being a felon in possession of a firearm, on its own, is not the crime of the century. But it *is* still a crime, and it *is* still one that merits a significant custodial sentence, especially when considering the need

UNITED STATES' SENTENCING MEMORANDUM   1
3:22-CR-00075-WHO

for deterrence, the need to avoid unwarranted sentencing disparities, and Releford's horrifying personal history which is only partially counterbalanced by his somewhat satisfactory recent performance on release. The government agrees with Probation's recommendation that 33 months' imprisonment followed by 3 years' supervised release is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## II.  PROCEDURAL HISTORY

On February 24, 2022, the Grand Jury returned an Indictment against Releford charging one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Dkt. 13. Releford was in and out of custody due to an additional allegation of firearms possession that happened while he was released on conditions on the instant charge. On February 23, 2023, the defendant pleaded guilty to the sole count, pursuant to an open plea. Dkt. 90. Sentencing was deferred several times before ultimately being set for March 28, 2024. Dkt. 112.

## III.  OFFENSE CONDUCT

On April 21, 2008, Releford was sentenced to 14 years in prison for kidnapping with a criminal street gang enhancement (California Penal Code 207(a)) and assault with a deadly weapon causing great bodily injury (California Penal Code 245(a)(1)). *See* PSR ¶ 29. Both were felonies and both related to his armed kidnapping and gang rape of an underaged female victim on the streets of downtown San Francisco. *See id.* He was paroled on September 6, 2021. *See id.*

On January 6, 2022, just a few months after his release from prison, police officers observed Releford talking to several individuals around the intersection of Third Street and Quesada Avenue, a high-crime area where local gangs are known to congregate and use as a "home turf." *See id.* ¶ 10. Releford himself was a known West-Mob gang member. *See id.* An ID check revealed that he was out on active parole with a condition that he could be searched at any time. *See id.* Officers decided to approach Releford who was sitting inside his vehicle. *See id.* ¶ 11.

The officers asked him to step out and escorted him to the back of his car, but then Releford suddenly bolted down the street. *See id.* The officers chased him and eventually brought him to the ground, where Releford continued to thrash and kick as the police tried to subdue and handcuff him. *See*

*id.* Two officers sustained minor injuries during the arrest, one of whom had to receive medical attention. *See id.*

At one point during the arrest, Releford tried to slide his body under a nearby car. After officers managed to restrain him, an officer felt and then spotted a gun under Releford's right arm, which fell and landed on the ground. *See id.* The gun—a Glock 26 Gen 5 9mm pistol not registered to him—was loaded with nine bullets. *See id.* Once back at the station, Releford blurted out, "Damn you all act like I started shooting at you all or something, I ran ok, I had a gun on me." *See id.* He later also said unprompted, "Like I said my apologies for resisting I didn't want to get caught with something on me." *See id.*

### IV.   SENTENCING GUIDELINES CALCULATION

The government agrees with the PSR's calculation of offense level. The base offense level is 20 because he possessed the firearm after sustaining a felony conviction for a crime of violence—namely the kidnapping and assault with a deadly weapon in 2006. *Id.* ¶ 17.[1] Three points are subtracted because he accepted responsibility. *Id.* ¶¶ 24–25. Thus the total offense level is 17. The government also agrees with the PSR's calculation of criminal history category III, bringing the guidelines range for this offense to 30–37 months' imprisonment. *Id.* ¶¶ 33, 55.

### V.   APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] Releford also has a controlled substances conviction from 2010—possession of a controlled substance in prison in violation of California Penal Code 4573.6—that separately qualifies him for a base offense level of 20 under § 2K2.1. *See* PSR ¶ 30.

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

## VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government agrees with Probation's recommendation of 33 months' imprisonment followed by 3 years' supervised release.

*a. Releford's Lack of Respect for the Law and Need for Adequate Deterrence*

Releford committed the instant offense just a few months after he was released from prison. He was on his gang's home turf, where he was not supposed to be. He was still on active parole. When confronted by police, he ran in order to avoid getting caught with "something on [him]." When subdued by police, he continued to thrash and kick, causing minor injuries to the arresting officers. Even if he were to claim that he carried the firearm in self-defense, his possession is still illegal. Felons should not be in possession of a firearm—a fact of which he was fully aware.

Even after being released on conditions earlier in the instant case, he was again arrested for possession of a different firearm. Though that firearm was ultimately not attributed to Releford—and the government does not seek to relitigate it now—several aspects of that case (like Releford's DNA on the firearm and the location of the firearm) continue to cause concern. Since being released on conditions again, Releford's performance has not been egregious but it has not been clean either—with numerous Form 8s filed including as recently as two days ago (March 19) when he attended a party, could not remember exactly what he used, and tested positive for marijuana. *See* Dkt. 121.

All in all, this paints the picture of a man who still lacks respect for the law and needs to be deterred from future criminal conduct. In the government's view, a below-guidelines sentence is insufficient.

### b. Avoiding Unwarranted Sentencing Disparities

Releford's guidelines range is 30 to 37 months. And though the guidelines range is of course not binding on this Court, it does show how other defendants with the same offense level and same criminal history category are typically treated. Indeed, according to Judiciary Sentencing Information data, for all 1586 defendants in FY2018–2022 with a primary guideline of § 2K2.1, a total offense level of 17, and a criminal history category III, the median length of imprisonment was 30 months (the low end) and the average length of imprisonment was 28 months (below the low end but only slightly). The applicable § 3553(a) factor here describes "the need to avoid unwarranted sentence disparities among defendants *with similar records* who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(5) (emphasis added). The government expects that most of these other 1586 defendants probably do not have a "similar record" of egregious kidnapping and gang rape like Releford. And though Releford's conviction is older, it is well within the time limit in U.S.S.G. § 4A1.1(a) for criminal history category purposes and U.S.S.G. § 2K2.1 contains no time limit at all for consideration for enhancement purposes. In short, the guidelines classify this crime for this type of defendant as meriting 30 to 37 months imprisonment. To avoid unwarranted sentencing disparities, Releford's sentence should be within or at least near that range.

### c. Horrifying Personal History and Characteristics

Releford's kidnapping and gang rape case is truly horrifying. On April 19, 2006, Releford and three other men were driving in a van around downtown San Francisco when they pulled up to an underaged female victim near Turk and Taylor Streets. *See* PSR ¶ 29. Releford pointed his gun at the victim and ordered her to get in the van, which drove off as one of the men instructed the victim to undress. *Id.* The victim was taken to a dead-end street and serially raped by the four. *Id.* Releford went first, forcing her to orally copulate him and then have vaginal sex. *Id.* At some point, he also penetrated her vagina with the barrel of the gun and with a Hennessy liquor bottle. *Id.* The others took their turns, forcing the victim into oral, vaginal, and anal sex. *Id.*

It is true that Releford already served his time for this crime. He was sentenced to 14 years in prison and he served that entire term. It is also true that Releford was only 16 years old at the time of the crime, though he was tried as an adult. He grew up in a neighborhood surrounded by gangs and grew up

with trauma.[2] The government anticipates the defense will point to these two factors—Releford's age at the time of the crime, and Releford having already done his time for that crime—as reasons why this prior crime should be disregarded. However, while it is important to put this crime in its appropriate context, it cannot be ignored entirely. The "personal history and characteristics of the defendant" factor under § 3553(a)(1) contains no time limitation. There is no exception for crimes already punished or crimes committed earlier in life. It is all considered under "personal history" and it is appropriately considered when determining Releford's sentence in the instant case.

Similarly, the government anticipates the defense will argue that Releford has turned his life around since being released. And while Releford has made progress towards finding employment and moving out of San Francisco—progress which has been reported to the Court in previous status conferences—his performance under the extremely watchful eye of Pretrial has been far from perfect. There have been multiple concerning incidents ranging from several location monitoring alerts to a positive drug test (noted in a Form 8 from March 19, *see* Dkt. 121) to yet another firearms possession incident which, though the Court ultimately chose not to attribute this to Releford personally, still generates concerns given, for example, that the firearm was located under the driver's seat where he was seen seated shortly before. *See id.* ¶ 34. The instant offense was itself committed while Releford was still on active parole. *See id.* ¶ 10. His recent employment and housing efforts will serve him well in the future, but it should be after another significant period of time in custody for the reasons outlined above.

**VII.   CONCLUSION**

Defendant Allen Releford was caught in possession of a loaded firearm just a few months after his parole from a particularly horrifying violent crime. He deserves a custodial sentence. In order to promote respect for the law, afford adequate deterrence, avoid unwarranted sentencing disparities, and appropriately consider his personal history and characteristics, the government respectfully recommends the same sentence as Probation: 33 months' imprisonment followed by 3 years' supervised release. The

//

//

---

[2] Releford did not complete the Adverse Childhood Experiences assessment. *See* PSR ¶¶ 46–47.

government believes this sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

DATED: March 21, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ George O. Hageman*
GEORGE O. HAGEMAN
Assistant United States Attorney